**David PRICE, Plaintiff,**

v.

**VIKING PRESS, INC., Peter Matthiessen and Bruce Ellison, Defendants.**

**Civ. No. 4–85–819.**

United States District Court, D. Minnesota, Fourth Division.

Dec. 12, 1986.

Dorsey & Whitney and Daniel P. O'Keefe, Minneapolis, Minn., for David Price; Banks & Johnson and Wayne F. Gilbert, Rapid City, S.D., of counsel.

Leonard, Keyes, Briggs & Morgan, St. Paul, Minn., Special Master.

Gerald Reade, Yankton, S.D., and Martin Garbus and Richard Kurnit, New York City, for Viking Press, Inc.

Davenport, Evans, Hurwitz & Smith, Lawrence L. Piersol, Sioux Falls, S.D., for Peter Matthiessen.

Bruce Ellison, Rapid City, S.D., pro se.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Plaintiff David Price brought this defamation action against Viking Press, Peter Matthiessen, and Bruce Ellison, seeking damages in connection with the publication of the book entitled *In the Spirit of Crazy Horse*.[1] Now before the court is plaintiff's motion to compel discovery.

The background of this case is set forth in the court's previous opinion. 625 F.Supp. 641 (D.Minn.1985). Plaintiff, an FBI agent, alleges that portions of the book, which was written by defendant Matthiessen and published by defendant Viking in 1983, defames him by accusing him of various activities in connection with events at Wounded Knee, South Dakota, in 1973 and events surrounding and subsequent to the killing of two FBI agents on the Pine Ridge Indian reservation in 1975. The complaint alleges that the defamatory statements were made "maliciously and willfully with an intent to destroy Price's personal and business reputation in reckless disregard of the truth." Complaint ¶ 12.

Plaintiff states that defendants have sought to preclude discovery into aspects of the book other than the alleged defamatory statements set forth in the complaint. Plaintiff argues that evidence concerning the writing of other portions of the book is relevant to show defendants' state of mind and to meet his burden under *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). More specifically, plaintiff "seek[s] to show that defendants purposefully engaged in a systematic pattern of making allegedly factual statements without any meaningful substantiation, statements designed to support their basic theme that Leonard Peltier was railroaded into prison for a crime he did not commit, as a part of a larger effort by the federal government and mining conglomerates to destroy AIM." According to plaintiff, a pattern of reckless factual assertions would be probative as to defendants' state of mind in defaming plaintiff.

Defendants contend that discovery must be limited to the claims in the complaint. According to defendants, malice cannot be shown by showing a pattern of false state-

1. Several other tort claims were dismissed in the court's order dated December 30, 1985.

ments of collateral facts. Moreover, defendants assert that acceptance of plaintiff's proposed scope of discovery would require the proof of truth or falsity of all of the related collateral facts. Defendants argue that this broad scope would make discovery in the case unmanageable.

In consideration of this motion, the court has carefully reviewed the parties' submissions and the complaint and has read the entire 611 pages of text and notes of *In the Spirit of Crazy Horse*. The book purports to tell about certain events on and related to Indian reservations in South Dakota. It is dedicated to those "who still seek to live in the wisdom of the Indian way." Central attention is given to the so-called "reservation murders" of two FBI agents in 1975 and the subsequent investigation and litigation growing out of these deaths. The author also discusses events related to the occupation of Wounded Knee, South Dakota in 1973. It is the author's position that these events are part of a long and sad history of relations between the federal government and the Indian peoples. Considerable attention is given to nineteenth-century treaties and various acts of Congress. There are also references to mineral deposits, oil, and uranium presently existing on Indian lands, as well as gold mining that has taken place there. Several Indian persons and supporters are quoted as saying that they believe control of these assets to be the real goal of federal policy toward the Indians.

The court recognizes that a libel plaintiff faces a difficult burden under the *New York Times* standard and that *Herbert v. Lando*, 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979), requires discovery into the editorial process in order to meet that standard. *Herbert* noted, however, that "judges should not hesitate to exercise appropriate control over the discovery process" and should "restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense....'" *Id.* at 177, 99 S.Ct. at 1649 (quoting Fed.R.Civ.P. 26(c)).

Plaintiff wants to inquire into what he claims is the author's thesis—that FBI ac-

tions discussed in the book are part of a conspiracy between the United States government and industry to remove impediments to "the grabbing of fabulous uranium deposits." This attempted discovery would go far beyond the issues raised by the complaint and seeks in fact to go off into areas only touched on, but not developed, in the book. A reading of the book makes clear its bulk deals only peripherally with uranium deposits or any government conspiracy with industry. Discovery into any conspiracy to obtain mineral deposits would be collateral to any issue in this litigation. A law review article cited by plaintiff supports this position. It states that "evidence of the defendant's general disdain for truth and accuracy *with respect to plaintiff and the subject matter of the defamation* is probative and should not be ignored." Bloom, *Proof of Fault in Media Defamation Cases,* 38 Vand.L.Rev. 247, 278 (1985) (emphasis added). Here, discovery into the broader conspiratorial thesis does not concern "plaintiff and the subject matter of the defamation."

On the other hand, defendants propose too narrow a scope for discovery. Discovery should not be limited to the specific alleged defamatory statements identified in the complaint. Again referring to Professor Bloom's formulation, evidence concerning any "general disdain for truth and accuracy with respect to plaintiff and the subject matter of the defamation is probative" and should be discoverable. Plaintiff contends that the alleged defamatory statements

> stated or suggested that [he] is a murderer; that he knowingly suborned perjury; that he violated constitutional and other rights in the performance of his duties as an FBI Special Agent; that he unlawfully harrassed American Indian Movement ("AIM") members and attempted to destroy AIM; that he is a liar; that he is corrupt; that he is vicious and violent; that he is a racist; that he willfully neglects the duties of his job; and that he was engaged in illegal and wrongful conduct.

Complaint ¶ 9. Discovery concerning these matters would be probative of defendants'

state of mind concerning the specific statements identified in the complaint. In addition, discovery cannot fairly be limited to Price's actions or statements alone. They can only be understood in a larger context. Therefore, plaintiff should be able to discover background facts closely related to the subject matter of the alleged defamations, which may be certain events at Wounded Knee or certain matters touching on the "reservation murders" and the subsequent investigation. By contrast, discovery should not extend to areas largely unrelated to plaintiff and the alleged defamation, such as distant historical facts, broad conspiracy theories, mineral deposits, Indian legends, and unrelated activities and backgrounds of other persons described in the book. As a general rule, the less related a fact is to David Price and the subject matter of the defamation, the more questionable is its probative value and its discoverability.

Considerations of probative value, case management, and prudent use of litigation resources lead to the conclusion that discovery should be limited as indicated above.

Accordingly, based on the above and all the files, records, and proceedings herein,

IT IS HEREBY ORDERED that plaintiff's motion to compel discovery is granted in part and denied in part.